## Kleinhans Estate.

540

Argued September 28, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Alexander H. Lindsay,* with him *Lindsay, McGinnis, McCandless & McCabe,* for appellant.

*John M. Duff,* Deputy Attorney General, with him *Donetta Ambrose,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

Opinion by Mr. Justice Roberts, November 26, 1973:

On April 8, 1967, Harry Kleinhans died, leaving a will which, inter alia, divided his residuary estate

equally into two trusts. His will provided that the income of trust A would be payable to testator's wife, Clara G. Kleinhans, for life. His wife was given a general testamentary power of appointment over the principal of trust A. The income of trust B was to be paid to testator's sister for life, with the remainder to two grandsons of testator.

The first and final account was filed June 17, 1968, in the Orphans' Court of Crawford County. It was confirmed on August 16, and distribution ordered. One-half of the residue, as directed by trust B, was distributed outright to testator's grandsons, testator's sister having died in the interval. The other half was distributed to testator's executor as trustee for the widow pursuant to the terms of trust A. Although certain taxes, both federal and state, were paid out of the residue before distribution, no tax was paid on the value of either the life estate or the remainder of trust A.

Clara Kleinhans died January 7, 1972, leaving a will which was probated in Allegheny County. Testatrix exercised in favor of her estate the general testamentary power of appointment in trust A. By her will those assets would in turn be distributed to three heirs of testatrix, collaterals as to testator. No party in interest challenges that this testamentary transfer is subject to a 15% tax at the collateral rate.[1]

---

[1] The Pennsylvania inheritance tax is imposed at two tax rates. A 6% inheritance tax is levied upon transfers to persons generally considered "direct heirs." Act of December 29, 1967, P.L. 915, § 1, 72 P.S. § 2485-403 (Supp. 1973). The 6% rate applies to estates for all persons dying on or after Dec. 29, 1967, and to inter vivos transfers made by persons dying on or after that day regardless of the date of the transfer. Id. § 2. The 1967 amendment did not change the law in effect for persons dying before Dec. 29, 1967. See Act of June 15, 1961, P.L. 373, Art. IV, § 403, 72 P.S. § 2485-403 (1964) (2% rate on "direct heirs"). Transfers of property to any other person not designated in section 403 are taxed at 15%. Id. § 404, 72 P.S.

An account was filed in the Orphans' Court of Allegheny County on November 21, 1972. Included was the principal of trust A, which was distributed to the estate at the termination of the widow's life tenancy. At audit the Commonwealth asserted its claim against the estate for the 15% tax.

The estate of Clara Kleinhans argued in the orphans' court that it was liable for only one-half of the 15% tax, because testator had directed that taxes be shared equally by the transferees of both trusts. In support of its argument, the estate relied upon the following provision in testator's will. "FIRST: I direct that all my just debts and funeral expenses be fully paid and satisfied as soon as conveniently may be after my decease and further direct that all Pennsylvania inheritance tax and Federal Estate tax be paid from my residuary Estate." Rejecting the estate's argument, the orphans' court held that the full 15% tax was to be paid out of the assets of trust A before distribution to testatrix's beneficiaries. The estate has appealed.[2] We agree with the determination of the orphans' court and affirm its decree.

The question presented is whether the provision in testator's will directing that "all Pennsylvania inheritance tax . . . be paid from my residuary Estate" limits the tax liability of the remainder beneficiaries of trust A to one-half of the tax due on their inheritance. Appellant argues that this result is mandated by section 718(c) of the Inheritance and Estate Tax Act of 1961,[3]

---

§ 2485-404 (1964). These other persons are commonly referred to as collateral beneficiaries.

[2] This Court's jurisdiction attaches by virtue of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp. 1973).

[3] Act of June 15, 1961, P.L. 373, Art. VII, § 718(c), 72 P.S. § 2485-718(c) (1964).

which provides: "In the absence of a contrary intent appearing in the will or other instrument of transfer and except as provided in subsections (a) and (b) of this section, the ultimate liability for inheritance tax imposed by this act shall be upon each transferee."[4] If appellant's interpretation of section 718(c) were to prevail, the Commonwealth would have to attempt to collect the other half of the tax from the remainder beneficiaries of trust B, who received their legacy prior to the termination of the widow's life tenancy.[5] We conclude that section 718(c) does not justify such an unsound result.

Appellant's argument is premised upon a misunderstanding of the effect and scope of section 718(c). That section merely affords a testator the privilege of shifting, in whole or in part, among his transferees their "ultimate liability for inheritance tax." Section

---

[4] Subsections (a) and (b) of § 718 provide: "(a) Outright Devises and Bequests.—In the absence of a contrary intent appearing in the will, the inheritance tax imposed by this act on the transfer of property which passes by will absolutely and in fee, and which is not part of the residuary estate, shall be paid out of the residuary estate and charged in the same manner as a general administration expense. Such payment shall be made by the personal representative and, if not so paid, shall be made by the transferee of the residuary estate. (b) Transfer for Limited Period. In the absence of a contrary intent appearing in the will or other instrument of transfer, the inheritance tax imposed by this act, in the case of a transfer of any estate income or interest for a term of years, for life, or for other limited period, shall be paid out of the principal of the property by which the estate, income or interest is supported. Such payment shall be made by the personal representative and, if not so paid, shall be made by the trustee, if any, and, if not so paid, shall be made by the transferee of such principal." Act of June 15, 1961, P.L. 373, Art. VII, § 718(a), (b), 72 P.S. § 2485-718(a), (b) (1964).

[5] A power of appointment is exempt from taxation in the estate of the donee, Act of June 15, 1961, P.L. 373, Art. III, § 309, 72 P.S. § 2485-309 (1964), and "shall be taxed only as part of the estate of the donor." Id. Art. IV, § 408, 72 P.S. § 2485-408 (1964).

718(c) does not in any way abridge the right of the Commonwealth to collect from a transferee the full inheritance tax imposed upon the transfer.[6]

In *Zellefrow Estate*, 450 Pa. 302, 299 A.2d 248 (1973), this Court dealt with a similar misconception of a companion provision, section 718(a).[7] In that case, we were required to determine whether taxes due on specific bequests could be deducted from the residue before the tax on the residue was computed. The orphans' court held that such tax could be deducted on the theory that section 718(a) directed that the inheritance tax due on specific bequests "shall be paid out of the residuary estate and charged in the same manner as a general administrative expense." We disagreed and stated: "Such an interpretation fails to recognize that Section 718(a) merely designates the source of payment of the tax as between the devisees of the specific gifts and those of the residue. . . . Section 718(a) does not deal with the imposition of the inheritance tax; that is provided for in Section 201." Id. at 305, 299 A.2d at 250 (footnote omitted). See *Remmel Estate*, 425 Pa. 325, 330 n.6, 228 A.2d 889, 892 n.6

---

[6] The Commonwealth in its appraisement of testator's estate, filed on October 18, 1967, put all parties in interest on notice of its statutory entitlement to inheritance tax by inserting the following. "In the event that any future interest in this estate is transferred in possession or enjoyment to collateral heirs of the decedent after the expiration of any estate for life or for years, the Commonwealth hereby expressly reserves the right to appraise and assess transfer inheritance taxes at the lawful collateral rate on any such future interest." A statutory procedure exists whereby "any party in interest may elect . . . to have the value of a future interest determined as of the date of decedent's death and to pay the tax assessed thereon." Act of June 15, 1961, P.L. 373, Art. VII, § 713(a), 72 P.S. § 2485-713(a) (1964), as amended, 72 P.S. § 2485-713(a) (Supp. 1973) (footnote omitted). See id. § 714, 72 P.S. § 2485-714 (1964), as amended, 72 P.S. § 2485-714 (Supp. 1973).

[7] For the full text of § 718(a), see note 4, supra.

(1967) ; *Lengel Estate,* 33 Pa. D. & C.2d 1 (O.C. Berks County 1963) ; cf. *Frick's Estate,* 277 Pa. 242, 121 A. 35 (1923), rev'd on other grounds, 268 U.S. 473, 45 S. Ct. 603 (1925).

By a parity of reasoning the same conclusion holds for section 718(c) ; it also merely designates the source of payment of the tax. Section 201 of the Inheritance and Estate Tax Act of 1961 provides: "An inheritance tax for the use of the Commonwealth is hereby imposed upon every transfer subject to tax under this act . . . ."[8] The mandate of that section is further fleshed out by section 211. "All transfers of property . . . by will . . . from a resident of this Commonwealth, are subject to tax under this act."[9] This Court has often recognized that the inheritance tax is imposed upon the privilege of receiving decedent's property, or, alternatively, is "a tax on the right of succession in the estate of the decedent." *Remmel Estate,* 425 Pa. 325, 328, 228 A.2d 889, 891-92 (1967) ; *Belefski Estate,* 413 Pa. 365, 369-70, 196 A.2d 850, 852 (1964) ; *Hoffmann Estate,* 399 Pa. 96, 100, 160 A.2d 237, 239 (1960) ; *Tack's Estate,* 325 Pa. 545, 191 A. 155 (1937) ; *Shugars v. Chamberlain Amusement Enterprises, Inc.,* 284 Pa. 200, 205, 130 A. 426, 427 (1925) ; *Orcutt's Appeal,* 97 Pa. 179, 185 (1881).

---

[8] Act of June 15, 1961, P.L. 373, Art. II, § 201, 72 P.S. § 2485-201 (1964). "Transfer" is defined as including "the passage of ownership of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise." Id. Art. I, § 102(22), 72 P.S. § 2485-102(22) (1964).

[9] Act of June 15, 1961, P.L. 373, Art. II, § 211, 72 P.S. § 2485-211 (1964). See id. §§ 212-13, 72 P.S. §§ 2485-212 to -213 (1964).

Certain inter vivos transfers are also subject to inheritance tax. Id. §§ 221-26, 72 P.S. §§ 2485-221 to -226 (1964). See id. § 241, 72 P.S. § 2485-241 (1964). Other transfers of property have been exempted from the payment of inheritance tax. Id. Art. III, §§ 301-16, 72 P.S. §§ 2485-301 to -316 (1964).

Although the testator may allocate the tax burden of his bequests among his beneficiaries, in doing so, he cannot thereby prejudice or diminish the Commonwealth's right to its total tax entitlement. The present situation is analogous to the one in which the source designated by a testator for the payment of taxes is insufficient to pay the taxes. In such a case, each transferee is liable for the tax on his legacy. See *Bryant's Estate,* 315 Pa. 151 155, 173 A. 190, 191 (1934); *Folwell's Estate,* 12 Pa. D. & C.2d 552, 553 (O.C. Montgomery County 1958); *Mertz Estate,* 5 Pa. D. & C.2d 262 (O.C. Lehigh County 1955); *Thomson's Estate,* 19 Pa. D. & C. 289, 292 (O.C. Philadelphia County 1933).

Finally, the estate argues that because property subect to a power of appointment is taxed in the donor's estate,[10] and because the donee's estate is not the personal representative of testator (donor), it has no duty to pay the 15% inheritance tax. To answer this contention, it is necessary to turn to section 741, which in pertinent part provides: "Subject to the provisions of section 718, every personal representative, or other fiduciary in charge of or in possession of any property, or instruments evidencing ownership thereof, the transfer of which is subject to a tax imposed by this act . . . shall deduct the tax from the property, if money, or shall collect the tax from the transferee."[11] Section 741

---

[10] See note 5, supra.

[11] Act of June 15, 1961, P.L. 373, Art. VII, § 741, 72 P.S. § 2485-741 (1964), as amended, 72 P.S. § 2485-741 (Supp. 1973).

Section 741 sets forth the powers and duties of a fiduciary in respect to property the transfer of which is subject to inheritance tax. The thrust of the section is that the burden of the inheritance tax is upon the transferee. "Subject to the provisions of section 718, every personal representative, or other fiduciary in charge of or in possession of any property, or instruments evidencing owner-

affirmatively contradicts appellant's limiting construction.[12] This section does not confine its scope to personal representatives or fiduciaries of a particular decedent or testator, rather it imposes a statutory duty on "every" personal representative or fiduciary. Moreover, the fiduciary need merely be "in charge of" property. And the property is not restricted to property of a specified testator, but, more universally, is "any property . . . the transfer of which is subject to [inheritance] tax."

Section 718(c) does not remove from the principal of trust A the obligation of satisfying the full 15% inheritance tax imposed upon its transfer to the beneficiaries chosen by testatrix. Appellant is bound by

---

ship thereof, the transfer of which is subject to a tax imposed by this act other than tax on a future interest not yet delinquent, shall deduct the tax from the property, if money, or shall collect the tax from the transferee. Any delivery of property or instruments by such fiduciary to a transferee, except in accordance with a decree of distribution of the court, shall not relieve him of personal liability for a tax imposed by this act. No personal representative or other fiduciary in charge of or in possession of any property subject to this act shall be compelled to pay or deliver it to the transferee except upon payment to him of the tax due thereon other than tax on a future interest not yet delinquent. If such transferee neglects or refuses to pay the tax, the personal representative or other fiduciary may sell the property subject to the tax, or so much thereof as is necessary, under direction of the court. All money retained by the personal representative or other fiduciary, or paid to him on account of the taxes imposed by this act, shall be remitted by him before the tax becomes delinquent or, if received thereafter, shall be remitted by him promptly upon its receipt." Id. (footnote omitted).

[12] Appellant also contends that in section 741 the phrase "[s]ubject to the provisions of section 718" incorporates the language of section 718(c) "[i]n the absence of a contrary intent appearing in the will." Even if this were the proper interpretation of section 741, our holding that section 718(c) cannot be read to limit the Commonwealth's right to collect taxes nullifies appellant's argument.

section 714 to deduct from the assets of trust A this inheritance tax.[13]

Decree affirmed. Each party pay own costs.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. The effect of the majority decision is to require one citizen to pay taxes owed by another citizen. Such a requirement is a taking of property without due process of law. The legislature granted the testator the authority to require that the estate pay all inheritance taxes owed. In effect, the testator has the power to limit the amount each devisee shall receive irrespective of favorable treatment which any devisee might otherwise receive by the state's inheritance tax rate. For example, assume that a testator, who has an estate of $1,000, wishes that all inheritance taxes be paid from that sum before a distribution of one-half is made to his friend, X, and one-half to his son, B. If X's tax rate, as a collateral heir, is 15% and his son's rate, as a direct heir, is 2% and these amounts are deducted from the estate prior to distribution, both X and B would receive $457.50 from the residuary estate. That amount is computed as follows: $1,000 ÷ 2 X 2% = $10 inheritance tax due on B's share of the estate $1,000 ÷ 2 X 15% = $75 inheritance tax due on X's share of the estate $75 + $10 = $85.00 total inheritance tax due from the estate $1,000 — $85 = $915 residuary estate to be divided equally between X and B Therefore, X and B each receive $457.50 from the residuary estate. If, on the other hand, the tax had been payable by each devisee rather than by the estate, X would have received a net amount of $425 ($500—

---

[13] Nothing in our disposition prevents appellant from seeking contribution from the remaindermen of trust B. The orphans' court adjudication was properly without prejudice to the assertion of this claim.

$75) and B would have received a net amount of $490 ($500 — $10). However, the testator, notwithstanding the fact that the state would give more favorable treatment to his son as a direct heir, wanted X to share *equally* with B. The testator could conceivably have computed the tax that the direct heir and the collateral heir would be required to pay and have divided his estate accordingly so that X and B would still be treated equally. However, rather than requiring the testator to perform an elaborate computation of the tax payable by each devisee, the state provides the testator a short cut—he can elect to have his estate pay the appropriate taxes directly and then have the net amount remaining, the residuary estate, divided as he wishes. That is the effect of section 718(c). Once this right is afforded to a testator, it is highly inappropriate for the state, simply because it has not collected the tax due immediately or has failed to request that the largest amount payable be held in escrow, to force one devisee to pay more than his appropriate share of the inheritance tax due. The devisee should not have to pay for the state's mistake.

The majority notes that the appellant may seek contribution from the other remaindermen. To force the appellant to absorb the cost of such litigation is to penalize him from the state's error. Furthermore, we cannot require one citizen to pay another's taxes simply because it is more convenient for the state. It should be the state's responsibility, not the appellant's, to seek the taxes due. This is especially true, where, as here, the appellant's position as eventual devisee was not known to him at the time distribution was made. Appellant had no way to protect his interests. The state, however, was certainly able to protect itself at that time. For the state's failure to take appropriate action, we should not now penalize the innocent appellant.

The majority is correct when it states section 718 designates the *source* of payment of the tax. That

source in this case was the testator's *entire* estate and not just the amount passing to the appellant. The state should not try to force the effect of its inaction at the time of initial distribution on the innocent appellant. The state should uphold its promise to the testator— that it shall follow the testator's wishes if he determines from what source the inheritance taxes will be paid. The Commonwealth has every right to collect the full tax due. It, however, cannot force one, who the state recognizes should not have to pay the entire amount owing, to pay more thanh is fair share. *See Zellefrow Estate,* 450 Pa. 302, 308, 299 A.2d 248, 251 (1973) (MANDERINO, J., dissenting).